IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:14-CV-170-F

PAMELA MELVIN,                        )
                                      )
            Plaintiff,                )
                                      )
      v.                              )          **O R D E R**
                                      )
THE SOCIAL SECURITY                   )
ADMINISTRATION, et al.,               )
                                      )
            Defendants.

This matter is before the court on the Motions to Dismiss [DE-51; DE-74] filed by

Defendants the Social Security Administration and Assad Meymandi, M.D., respectively. Also

before the court are the following motions filed by the *pro se* Plaintiff Pamela Melvin: Motion

for a Stay of the Proceedings [DE-88]; Expedited Motion for a Protection Order with Affidavit

[DE-101]; Motions for the Court to Immediately Order SSA's Attorneys to Terminate their

Access to her Computer and Smart Phone and to Require Defendants to Respond to her Future

Motions [DE-103]; Motion to File a Delayed Second Amended Complaint [DE-108]; Motion for

Leave to File a Second Amended Complaint [DE-109]; Motion for the Court to Change the

Caption of this Action [DE-110]; Motion for Leave to File Documents Under Seal [DE-114];

Motion for Defendant Meymandi to Clarify his Statements [DE-120]; Motion to Strike

Defendant's SSA [sic] Objections, Statements and Defenses [DE-121]; and Motion to Strike

Defendant's [sic] Meymandi's Statements in DE 75, 115, and 118 [DE-122]. These matters are

ripe for ruling.

# I. BACKGROUND

The allegations in Plaintiff's proposed Second Amended Complaint are as follows. Plaintiff applied for disability benefits in 1995, and was awarded those benefits by an Administrative Law Judge ("ALJ") in 1996 with a backdated disability onset date to 1995. Prop. Sec. Am. Compl. [DE-109-1] ¶¶ 11, 27-33. Subsequently, in 1997, the ALJ who determined that Plaintiff was disabled retired. *Id.* ¶ 34. Shortly thereafter, Plaintiff received notice from the SSA that it was reopening her claim on the basis that her disability did not start in 1995. *Id.* ¶ 37. Plaintiff appealed that decision, and had a hearing before another ALJ in February 1998. *Id.* ¶¶ 37, 39. According to Plaintiff, "[a]t the very start of the hearing, [the second] ALJ stated that Plaintiff's case was reopened because [the first ALJ] died. . . . All statements made by [the second ALJ] on February 2, 1998 were recorded." *Id.* ¶ 39. The second ALJ granted Plaintiff's request to continue the hearing, and rescheduled it for May 28, 1998. *Id.* ¶ 40.

Plaintiff contends that the focus of the May hearing was whether she was disabled at all, and not whether the disability started in 1996 as opposed to 1995; she contends that she was not notified of this determination prior to the start of the hearing. *Id.* ¶¶ 41-42. Plaintiff asserts that at the close the hearing, the second ALJ "stated to Plaintiff that his supervisors in Washington DC told him that he had to rule that Plaintiff was never disabled or he would lose his job." *Id.* ¶ 45. Plaintiff contends she requested a copy of the recording of the May 1998 hearing several times, but was never provided with the recording and was informed by various SSA employees that the recording was missing. *Id.* ¶¶ 53-71. At some point, Plaintiff was again awarded disability benefits, with a backdated disability onset date to 1995. Additionally, in the early 2000s, Plaintiff submitted to the U.S. Department of Veterans Affairs ("VA") a service-connected compensation claim that included, but was not limited to, a claim for mental and

2

emotional distress and depression resulting from sexual abuse she alleges she encountered while serving in the Army in the 1970s. *Id.* ¶ 76.

In May 2004, Plaintiff received a letter from the SSA stating that her disability benefits were terminated and that she had been overpaid $54,628. *Id.* ¶ 95. About a year and a half later, in January 2006, Plaintiff filed an application for Social Security Disability Insurance Benefits, stating that she was disabled to due, *inter alia*, Rheumatoid arthritis, depression, anxiety, and military service-connected Post Traumatic Stress Disorder ("PTSD"). *Id.* ¶ 75. Plaintiff contends that as part of the 2006 application, she signed a consent form permitting Defendant to obtain the medical records of private doctors and doctors at the Veterans Administration ("VA") who had treated her. *Id.* ¶ 78. She also had to submit to examinations with two additional doctors, including Defendant Meymandi. *Id.* ¶ 78. Plaintiff asserts that during Meymandi's April 11, 2006, evaluation, she provided information in response to his questions, including "that she never used drugs, that she was not and had never married, that she never dated after leaving the Army, a list of her jobs since leaving the Army including that she was a police officer . . . " *Id.* ¶ 234. She also told Meymandi about things she "experienced while she was in the United States Army in the 1970s including, but not limited to . . . the stalking and attackes [sic] [by a male service member] and the sexual abuse of [another service member], and the sexual harassment of other males, and that as a result, caused her to never dated [sic], marry, and to prefer asexual men-type clothing after leaving the Army." *Id.* ¶ 235. Plaintiff alleges that at the close of the evaluation, Meymandi told her "that she did have PTSD and that with proper counseling, she could overcome her past and get married." *Id.* ¶ 237. Subsequently, Plaintiff sought a copy of Meymandi's evaluation from Meymandi directly, but was told she could only receive a copy of the evaluation from the SSA. *Id.* ¶¶ 84, 87-88.

3

Plaintiff alleges that later in 2006, she was informed that SSA had granted her 2006 application for benefits, and found her "to be disabled as of September 2005 as the result of mood disorders and anxiety-related disorders." *Id.* ¶ 261. Plaintiff further requested a waiver of the recoupment of the $54,628 that SSA alleged she had been overpaid, and the SSA denied her request for waiver on July 12, 2006. *Id.* ¶ 97. Plaintiff filed an appeal of the decision to deny the request for waiver on July 17, 2006, but before the appeal was heard, she filed an action in this court on August 4, 2006, naming the Commissioner of the Social Security Administration as a defendant. *See Melvin v. Barnhart*, No. 5:06-CV-306-FL ("2006 action").

As summarized in an order issued by the Hon. Louise Flanagan, United States District Judge, in the 2006 action plaintiff asserted "that defendant did not adequately explain the basis for the decision, and that defendant's [sic] denied plaintiff her right to file a review and personal conference, as set out in 20 C.F.R. § 404.51 *et seq.*, prior to recovering the overpayment." *Melvin v. Barnhart*, No. 5:06-CV-306-FL, slip. op. at 4 (E.D.N.C. April 11, 2007). Defendant in the 2006 action filed a motion to remand, stating:

> The Commissioner is unable to locate the plaintiff's claim file and hearing tape, and is therefore requesting a remand to search for the file and tape. If the claim file and tape cannot be located within a reasonable amount of time, the plaintiff's claim will be remanded to an Administrative Law Judge to offer the plaintiff an opportunity for a new hearing and for reconstruction of the file.

*Melvin v. Barnhart*, No. 5:06-CV-306-FL, October 5, 2006 Motion to Remand. Judge Flanagan allowed the motion to remand, stating that "[i]f the file and hearing tape are not located within a reasonable time, the Commissioner is directed to reconstruct the file and to prove the plaintiff with the opportunity for a *de novo* hearing before an Administrative Law Judge." *Melvin v. Barnhart*, No. 5:06-CV-306-FL, slip op. at 1 (E.D.N.C. Oct. 13, 2006). Plaintiff promptly filed a motion to reconsider, and Defendant filed a motion to dismiss. Judge Flanagan allowed

Defendant's motion to dismiss, detailing Defendant's efforts to allow Plaintiff to exhaust her administrative remedies, and finding that the court lacked subject matter jurisdiction because of Plaintiff's failure to exhaust those remedies. She further instructed "defendant to treat plaintiff's filing of complaint in this action to have represented a protective filing of the administrative appeal referenced in the July 12, 2006 notice, and to proceed to an expedited administrative review of that and any other pending appeal(s) filed by plaintiff, with plaintiff being afforded all appropriate rights of due process as set forth in the Commissioner's regulations." *Melvin v. Barnhart*, No. 5:06-CV-306-FL, slip op. at 13 (E.D.N.C. April 11, 2007).

In 2009, Plaintiff filed another action in this court, *Melvin v. Social Security Administration*, 5:09-CV-235-FL ("2009 action"), "seeking monetary and injunctive relief and invoking the Privacy Act, 5 U.S.C. § 552a, the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, and the Fifth Amendment to the United States Constitution." *See Melvin v. Social Security Administration*, 5:09-CV-235-FL, slip. op. at 1-2 (E.D.N.C. May 13, 2010). She alleged "deficiencies in the SSA's treatment of her administrative appeal, specifically asserting that the SSA (1) failed to comply with this court's order in *Melvin v. Barnhart*, No. 5:06-CV-306-FL (E.D.N.C. Apr. 11, 2007), directing it to grant plaintiff an expedited review of her administrative appeal, (2) failed to respond to her document requests pursuant to FOIA and the Privacy Act, and (3) failed to maintain plaintiff's administrative disability benefits record." *Id.*

Judge Flanagan construed some of Plaintiff's claims in the 2009 action as stating Fifth Amendment Procedural Due Process claims, and dismissed those claims for lack of subject matter jurisdiction. *See Melvin v. Social Security Administration*, 5:09-CV-235-FL, slip op. at 6-7 (E.D.N.C. May 13, 2010). Judge Flanagan also dismissed Plaintiff's claim under the FTCA for

lack of subject matter jurisdiction. *Id.* at 12. She allowed Plaintiff's claims under the Privacy Act and FOIA to go forward. Defendant moved to dismiss the FOIA and Privacy Act claims. In the briefing on that motion, the SSA attached as exhibits letters to Plaintiff stating that the SSA was providing her with a copy of the transcript of the May 28, 1998 hearing, 639 pages of non-medical and medical records, and hearing tapes for February 2, 1998 and May 28, 1998. *See Melvin v. Social Security Administration*, 5:09-CV-235-FL, July 1, 2010 Motion to Dismiss Exs. A-B. The SSA also attached as an exhibit a Notice of Hearing for July 6, 2010. *Id.* Ex. E. Plaintiff filed documents contesting that she had received all of those records, but eventually filed a motion to voluntarily dismiss the remaining claims in the 2009 action herself. Judge Flanagan allowed Plaintiff's motion.

Plaintiff contends the notice she received for the July 6, 2010, hearing was inadequate, and she was unable to attend the hearing. Subsequently, the SSA issued a decision determining that Plaintiff was entitled to benefits beginning March 2006. Plaintiff later appealed this determination, and again requested various hearing tapes. She contends she has not received a response to this appeal.

While the 2009 action was pending, the Board of Veterans' Appeals in the VA issued a decision on Plaintiff's appeal from the VA's October 2002 rating decision, and found as fact that (1) the credible evidence did not establish the occurrence of a physical assault during Plaintiff's active military service; (2) Plaintiff does not have PTSD; and (3) Plaintiff does not have a psychiatric disorder that is attributable to her active military service. *See* Ex. R to Prop. Sec. Am. Compl. [DE-113-2]. The decision referenced a report and evaluation that Plaintiff contends includes the April 2006 evaluation of Defendant Meymandi. Plaintiff asserts that she did not authorize the SSA to provide the VA with her record from her disability benefit determinations.

Prop. Sec. Am. Compl. [DE-109] ¶ 420. Plaintiff contends that she first received this decision on March 6, 2012. *Id.* ¶ 243.

Plaintiff alleges that on March 19, 2012, SSA mailed to her son a compact disc that contained "only a few documents of the record," including Meymandi's written psychiatric evaluation. Prop. Sec. Am. Compl. [DE-109] ¶ 264. She asserts that upon reading the evaluation, she discovered that it had numerous false and fictitious statements in it. *Id.* ¶ 266 (listing the allegedly false statements). In addition to making other allegations regarding the evaluation, Plaintiff notes that Meymandi "wrote in his written psychiatric evaluation that Plaintiff is African-American female." *Id.* ¶ 280.

Plaintiff then filed a lawsuit in the United States District Court for the District of Columbia against the VA and numerous federal employees in their official capacities. *See Melvin v. United States Department of Veterans Affairs,* No. 1:12-CV-01501, Complaint (D.D.C. Sept. 11, 2012) ("2012 action"). She filed an Amended Complaint in that action on March 1, 2013, adding Meymandi as a defendant. She alleged that Meymandi conspired with an ALJ to deny her equal protection of the law in violation of 42 U.S.C. § 1985, and focused on Meymandi's statement in the April 1, 2006 evaluation. Meymandi moved to dismiss the claims against him on the basis of, *inter alia*, lack of personal jurisdiction. Plaintiff eventually withdrew her claims against Meymandi and asserted claims solely against the VA. The District Court in the 2012 action dismissed Plaintiff's claims under the Privacy Act, finding that the provisions of the Veterans Judicial Review Act ("VJRA"), as opposed to the Privacy Act, "provides the exclusive forum for bringing the challenges Plaintiff raises here." *See Melvin v. United States Department of Veterans Affairs,* No. 1:12-CV-01501, slip. op. at 18-19 (D.D.C. Sept. 30, 2014). That court

also found that Plaintiff's Privacy Act claim regarding a tape of an August 1, 2005, hearing was time-barred, and dismissed the other claims brought by Plaintiff. *Id.* at 20-21.

While the 2012 action was pending, Plaintiff initiated the instant lawsuit on March 21, 2014, naming the SSA and numerous newspapers. On October 14, 2014, the SSA moved to dismiss the claims asserted against it. On November 7, 2014, Plaintiff filed a motion to amend. The court subsequently recognized that Plaintiff had the right to amend her complaint once as a matter of course under Rule 15(a)(1)(B), and allowed her motion on December 19, 2014. The Amended Complaint omitted the various newspaper defendants, but continued to assert claims against the SSA. Additionally, Plaintiff added claims against Defendant Meymandi and Defendant Eleanor Cruise, another physician, both of whom she alleged conspired to violate her rights.

Defendant SSA filed motions for extension of time, and eventually filed a motion to dismiss the claims asserted against it in the First Amended Complaint. Defendant Meymandi also filed a motion to dismiss the claims asserted against him. Subsequently, Plaintiff filed numerous motions for extension of time and protective orders, contending that "federal attorneys" were causing electrical problems at her home and were hacking into her computer and other electronic devices. She also contended she was unable to receive medical treatment in the United States. The court repeatedly allowed Plaintiff's extensions of time, despite not finding Plaintiff's assertions credible. The court directed Defendants to respond to Plaintiff's motion for stay, and they have done so.

As her deadline to file responses to the pending motions to dismiss approached, Plaintiff filed a Motion to File a Delayed Second Amended Complaint [DE-108], again asserting that federal hackers had accessed her computer, and requesting that she be allowed to file an

amended complaint by June 1, 2015. On that date, Plaintiff filed a Motion for Leave to File a Second Amended Complaint [DE-109], contending that the motions to dismiss revealed corrections that needed to be made to her claims. Defendants SSA and Meymandi oppose these motions.

Plaintiff has continued to file various motions in this matter, including her Motion for Defendant Meymandi to Clarify His Statements [DE-120]. In that motion, Plaintiff seeks clarification from Meymandi whether he believes the district court in the 2012 action had personal jurisdiction over him. Plaintiff also has filed motions to strike various statements made by Defendants SSA and Meymandi in the briefing before the court.

## II. MOTIONS TO STRIKE

Because the motions to strike concern what matters the court will consider when ruling on other motions, the court considers them first. Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, Plaintiff moves to strike the "objections, statements, and defenses" made by Defendant SSA in its reply [DE-116] filed in support of its motion for summary judgment, and its response [DE-119] in opposition to Plaintiff's motions to file a second amended complaint. Similarly, Plaintiff moves to strike the "statements and defenses" in Defendant Meymandi's memorandum in support of his motion to dismiss [DE-75], his reply in support of his motion to dismiss [DE-115], and his response [DE-118] in opposition to her motions to file a second amended complaint.

Plaintiff argues that the statements made by the SSA must be stricken because, *inter alia*, (1) the SSA failed to timely respond to her First Amended Complaint; (2) the SSA has attempted to commit fraud upon the court or has made certain statements to harass her; and (3) the SSA has "fabricated" a different proposed second amended complaint than the one she filed with the

court. As to Meymandi's statements, Plaintiff argues that certain statements must be stricken because (1) they are frauds upon the court; (2) his statements violate Rule 11 of the Federal Rules of Civil Procedure; (3) he "fabricated" his own version of her complaint; and (4) various federal attorneys have accessed her computer.

Rule 12(f) allows a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike "are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore,* 252 F.3d 316, 347 (4th Cir. 2001) (quoting A. Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* §1380 (2d ed. 1990)).

There are a variety of reasons why Plaintiff's motions to strike must be denied. First, Rule 12(f) only allows a court to strike pleadings. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter."); *see also Int'l Longshoremen's Assn. Steamships Clerks Local 1624, AFL-CIO v. Virginia Int'l Terminals, Inc.*, 904 F. Supp. 500, 504 (E.D. Va. 1994) (concluding that summary judgment briefs and affidavits are not pleadings and therefore a Rule 12(f) motion could not be used to "strike" such documents). The specific documents Plaintiff seeks stricken are memoranda filed in support of, or in opposition to, motions. These do not constitute "pleadings." *See* Fed. R. Civ. P. 7(a) (defining pleadings).

Second, to the extent that Plaintiff contends that the SSA's motions in response to her First Amended Complaint were untimely, and therefore all subsequent documents must be stricken, the court declines to do so. Under the applicable federal rules, the SSA had fourteen days from December 19, 2014, to file its answer or other responsive motion to the First Amended

Complaint. *See* Fed. R. Civ. P. 15(a)(3). As Plaintiff recognizes, under the application of Rule 6, the deadline for SSA's response was Monday, January 5, 2015. SSA filed its motion to extend time to file a response one day late, on January 6, 2015. This delay, according to Plaintiff necessitates the striking of all SSA's subsequent motions and responses. As this court has previously observed, however, "this court is mindful of the Fourth Circuit's admonitions that 'the clear policy of the Federal Rules of Civil Procedure is to encourage the disposition of claims on their merits.'" *Dalenko v. Stephens*, No. 5:12-CV-122-F, 2014 WL 794045, at *3 (E.D.N.C. Feb. 27, 2014) (quoting *United States v. Moradi*, 673 F.2d 725, 727-28 (4th Cir. 1982)). Because Plaintiff cannot credibly argued that the she has been prejudiced by the 24-hour delay in filing the motion for extension of time, the court will not dismiss the SSA's various filings in this case.

To the extent that Plaintiff asserts various frauds have been committed, the court notes that it is capable of reading the pleadings and motions filed by the various parties and discerning what is an accurate representation of a document's contents. Finally, Plaintiff has not presented any credible evidence showing that any federal attorneys have accessed her computer, smart phone, electricity, etc., and the court will not "strike" any documents on that basis. Accordingly, the motions to strike [DE-121; DE-122] are DENIED.

### III. MOTIONS TO DISMISS AND MOTIONS TO AMEND

Defendants' opposition to Plaintiff's motions to amend incorporate the arguments set forth in their motions to dismiss. Accordingly, the court will consider them together.

**A.    Standard of Review**

Rule 8(a)(2) of the Federal Rules of Civil Procedure provide that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2). Accordingly, a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the sufficiency of a complaint, as governed by Rule 8. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In so doing, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (citing *Twombly*, 550 U.S. at 555 (2007)). Moreover, although the court draws all reasonable factual inferences in a plaintiff's favor, the court is not obligated to accept a complaint's legal conclusions drawn from the facts. *Iqbal*, 129 S.Ct. at 1949-50. Nor must the court accept as true "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 301-02 (4th Cir. 2008) (quotations omitted). Furthermore, the court must keep in mind that " a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 93 (internal citation omitted). Notwithstanding the court's obligation to liberally construe a *pro se* plaintiff's allegations, however, the court cannot ignore a clear failure to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Dismissal also is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense. *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir.1996); *see generally,* 5B A. Charles Alan Wright & Arthur R. Miller *Federal Pratice & Procedure* (3d ed. 2004) ("A complaint showing that the statute of limitations has run on the

claim is the most common situation in which the affirmative defense appears on the face of the pleading," rendering dismissal appropriate).

With regard to motions for leave to amend, Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court, in *Foman v. Davis*, 371 U.S. 178 (1962), set forth the general standard for district courts to consider when making Rule 15(a) determinations:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits. In the absence of any apparent or declared reason such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party for virtue of the allowance of the amendment, futility of the amendment, etc., the leave should, as the rules require, be "freely given."

*Id.* at 182 (quoting Fed. R. Civ. P. 15(a)). Thus, in the Fourth Circuit, the law is well settled "that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999). An amendment is futile "'if the proposed amended complaint fails to satisfy the requirements of the federal rules.'" *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (quoting *United States ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 740 (7th Cir. 2007)). The decision to deny or grant leave to amend a pleading is within a district court's discretion; however a court may not exercise its discretion in a way that undermines Rule 15. *See Pittston Co. v. United States*, 199 F.3d 694, 705 (4th Cir. 1999).

13

**B.    Analysis**

Defendants oppose Plaintiff's motions to amend on the basis of undue prejudice, undue delay, and futility. Defendants contend that even with Plaintiff's proposed amendments, she fails to state claims against them, and therefore the motions for leave to file an amended complaint must be denied as futile. The court agrees that allowing Plaintiff's motion for leave to amend the complaint would be futile, as she fails to state a claim in the Proposed Second Amended Complaint. The court will discuss Plaintiff's proposed claims in turn.

### 1.    Claims against SSA

Plaintiff asserts nine claims for relief against SSA. Eight of those claims are labeled as being asserted pursuant to the Privacy Act, but also allege that the SSA violated the First and Firth Amendments to the Constitution by denying access to the courts, the Fifth Amendment by denying equal protection of the laws and depriving her of a property interest without due process of law, as follows:

- First Claim for Relief: SSA violated 5 U.S.C. § 552a(e)(5) by intentionally and willfully maintaining in its record Meymandi's April 2006 written evaluation, which includes numerous false statements of fact, and adversely determining to release the evaluation to the VA in June 2008. SSA violated her First and Fifth Amendment rights by depriving her of the opportunity to petition the court to correct the record prior to its release to the VA, and also violated her equal protection rights.
- Second Claim for Relief: SSA violated the Privacy Act and deprived her of a property interest—a correct written evaluation—without due process of law by maintaining in its records and disclosing to the VA the April 2006 written evaluation which contains numerous factual errors.
- Third Claim for Relief: SSA violated the access provisions of the Privacy Act by failing to produce Meymandi's written evaluation in response to Plaintiff's numerous requests for her medical records. SSA deprived her of the right to access to federal and state courts, and the equal protection of the laws.
- Fourth Claim for Relief: SSA violated the Privacy Act by failing to maintain in its record her written requests for medical records and information regarding SSA's refusal to provide her copies of her medical records. SSA deprived her of the right to access to the court to correct and amend Meymandi's written evaluation prior to its disclosure to the VA.

14

- Fifth Claim for Relief: SSA violated the Privacy Act by maintaining copies of two authorizations to release copies of consultative examinations signed and dated by Plaintiff on April 11, 2006, with a "false date stamp" of April 17, 2008.
- Sixth Claim for Relief: SSA violated the Privacy Act by failing to maintain in its record some medical records the SSA received from 1995 through 2006 and the original hearing tapes of November 14, 1996, February 2, 1998, and May 28, 1998. SSA deprived Plaintiff of her property interest in a higher monthly disability benefit, deprived her of her right to appeal the determinations, and the right to appeal to the court its determination.
- Seventh Claim for Relief: SSA violated the Privacy Act by failing to maintain her appeal letter dated September 29, 2010 in its record and deprived her of a property interest in the form of higher disability benefits and deprived her of the right to appeal the determination.
- Eighth Claim for Relief: SSA violated the Privacy Act by removing from its records an August 1, 2000 determination of her benefits, the 1998 ALJ decision, the hearing tapes of 1996 and 1998 and medical records of 1994 through 1996. SSA deprived her of her right to access the court with regard to the 1998 ALJ decision and August 2000 determination, and deprived her of benefits without due process of law.

The ninth claim for relief seeks "Rule 60 Relief from Judgment and Order and Monetary Damages . . . on the First Claim for Relief of Civil Action No. 5:09-CV-235." The court will examine her ninth claim first.

### a. Rule 60 Relief

In Plaintiff's ninth cause of action, she seeks to resurrect the first claim of relief she asserted in the 2009 action before Judge Flanagan, which she labeled: "Violation of the Fifth Amendment of the United States Constitution: Deprivation of Property Interest (Failure to Maintain Written Appeals and Court Instructions in Record)." *See Melvin v. Social Security Administration*, 5:09-CV-235-FL, Compl. (E.D.N.C. June 24, 2009). In that claim for relief, Plaintiff alleged that the SSA deprived her of disability benefits and Medicare insurance to which is entitled, without due process of law. *Id.* ¶ 108. She also alleged that SSA violated the Privacy Act, 5 U.S.C. § 552a(e)(5) by willfully and intentionally failing to maintain in its records five appeals letters and the court's order in the 2006 action. *Id.* ¶¶ 104-05.

Judge Flanagan referred the 2009 action to Magistrate Judge Robert B. Jones, Jr. In a Memorandum and Recommendation ("M&R"), Judge Jones construed Plaintiff's first claim as seeking damages for alleged constitutional violations, and more specifically, as a claim arising under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Judge Jones explained that *Bivens* claims are not actionable against federal agencies like the SSA, and the Privacy Act precluded any *Bivens* actions. *See Melvin v. Social Security Administration*, 5:09-CV-235-FL, M&R at 9-10 (E.D.N.C. March 24, 2010). He then went on to analyze Plaintiff's Privacy Act claims, and specifically recognized that Plaintiff set forth a claim for violation of the maintenance provision of the of the Privacy Act in Count One. *Id.* at 15. Judge Jones stated "[a]t this juncture of the litigation, there appears to be no basis upon which this claim may be disposed of *sua sponte* by the Court" and recommended that SSA "be permitted to answer or otherwise respond to this cause of action." *Id.* at 16.

Plaintiff objected to the M&R, and stated that Judge Jones had converted and twisted her complaint. Judge Flanagan independently reviewed the complaint, and herself noted that Plaintiff's first claim "invoke[d] the Fifth Amendment of the United States Constitution." *See Melvin v. Social Security Administration*, 5:09-CV-235-FL, slip. op. at 6 (E.D.N.C. May 13, 2010). Judge Flanagan noted that Plaintiff had not specifically objected to Judge Jones' treatment of her Fifth Amendment claims, and more importantly, "having independently reviewed these first three claims for relief in the complaint, the court does not find the magistrate judge to have misconstrued the nature of those causes of action." *Id.* at 7. Finding there was no subject matter jurisdiction, Judge Flanagan dismissed the first claim for relief. *Id.* Judge Flanagan also, however, found that Plaintiff's claim for violation of the Privacy Act survived. *Id.* at 9.

Plaintiff filed both a motion to reconsider and a notice of appeal from Judge Flanagan's

May 13, 2010, Order in the 2009 action. She subsequently withdrew her motion to reconsider, and ultimately, moved to dismiss the remaining claims in the action, which Judge Flanagan allowed. As for Plaintiff's appeal as to the May 13, 2010, Order dismissing some, but not all of her claims, the Fourth Circuit dismissed it for being an improper interlocutory appeal. *See Melvin v. Social Security Administration*, No. 10-1577, slip. op. at 2 (4th Cir. Oct. 14, 2010). The Fourth Circuit later affirmed Judge Flanagan's order dismissing Plaintiff's claims and closing the case. *See Melvin v. Social Security Administration*, No. 10-2409, slip op. at 2 (4th Cir. Aug. 9, 2011).

Plaintiff now contends that the court's judgment in the 2009 action—which was affirmed by the Fourth Circuit—is void because, *inter alia*, (1) the M&R recognized that she asserted a claim for violation of the maintenance provisions of the Privacy Act; (2) Judge Flanagan's order dismissed the first claim as a *Bivens* claim, but did not expressly rule on the first claim as a Privacy Act claim; (3) the SSA never responded to the Privacy Act allegations in the first claim for relief. *See* Prop. Sec. Am. Compl. [DE-109-1] ¶¶ 641-68. She seeks relief via Rule 60 of the Federal Rules of Civil Procedure in this suit, as opposed to filing it in Civil Action No. 5:09-CV-235-FL.

Rule 60 provides for relief "from a final judgment, order, or proceeding" for reasons listed in the Rule, including that "the judgment is void." Fed. R. Civ. P. 60(b)(4). The language of Rule 60(b) seemingly contemplates that a party will file a motion to seek this relief. *Id.* ("On motion and just terms, the court may relieve a party . . . ."). The Rule "expresses a preference for parties to seek relief from a prior judgment by filing a motion in the prior case, but Rule 60(d) preserves the common law right of parties to bring a so-called equitable 'independent action' for relief." *Brodie v. Dept. of Health & Human Servs.*, 951 F. Supp. 2d 108, 114015 (D.D.C. 2013) (citing 11 Wright & Miller, *Federal Practice & Procedure*, § 2868 (3d ed. & Supp.) ("The

normal procedure to attack a judgment should be by motion in the court that rendered judgment," but, "in theory at least, the action may be brought in any court of competent jurisdiction")); *see also* Fed. R. Civ. P. 60(d)(1) (providing that Rule 60 "does not limit a court's power to entertain an independent action to relieve a party form a judgment, order, or proceeding").

Nevertheless, the Supreme Court has counseled that an independent action is "available only to prevent a grave miscarriage of justice" which is a "demanding standard." *United States v. Beggerly*, 524 U.S. 38, 47 (1998). This requires Plaintiff to show that the judgment in the 2009 action ought not, in equity and good conscience, be enforced; (2) that she had a "good claim" in the 2009 action; (3) that fraud, accident or mistake prevented her from succeeding on her claim; (4) the absence of fault or negligence on her part; and (5) the absence of any adequate remedy of law. *Asterbadi v. Leitess*, 176 F. App'x 426, 403 (4th Cir. 2006) (citing *Great Coastal Exp., Inc. v. Int'l Broth. of Teamsters*, 675 F.2d 1349, 1358 (4th Cir. 1982)). Even if the court assumes that Plaintiff can show the other requirements, the court cannot discern how Plaintiff has lacked an adequate remedy of law; namely, to assert her arguments in the original 2009 action, or file a Rule 60 motion in that action itself. The court, therefore, does not find that Plaintiff has met the demanding standard necessary to institute an independent action. Accordingly, her ninth claim for relief is futile.[1]

### b.   Privacy Act Claims

The Privacy Act "regulate[s] the collection, maintenance, use and dissemination of information by [federal] agencies and provides a private cause of action against federal agencies for violating the Act's provisions." *Doe v. Chao*, 540 U.S. 614, 618 (2004) (citation omitted); 5

---

[1]   This court's ruling on an independent action in equity to seek relief from the judgment in the 2009 action does not preclude Plaintiff from filing a Rule 60(b) motion in that action itself. In making that observation, of course, this court expresses no opinion on the likelihood of success of that motion.

Case 5:14-cv-00170-F   Document 130   Filed 08/27/15   Page 18 of 36

U.S.C. § 552a(g)(1) (providing that any individual may bring a civil action against an agency for violation of the Act).

The Privacy Act requires an agency to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). It allows an individual access to records pertaining to the individual, *see* 5 U.S.C. § 552a(d)(1), and allows an individual the right to request amendment to any record the individual believes is not "accurate, relevant, timely, or complete." 5 U.S.C. § 552a(d)(2)(B)(i). If the request to amend is denied, the individual may request an administrative appeal, and if that appeal denies the requested relief, the individual is entitled to place a concise statement of his or her disagreement in his or file. *See* 5 U.S.C. § 552a(d)(3). Additionally, the Privacy Act prohibits the disclosure of records without an individual's consent, subject to certain exceptions, *see* 5 U.S.C. § 552a(b).

An individual may file a civil action against an agency that "makes a determination . . . not to amend an individual's record in accordance with his request." 5 U.S.C. 552a(g)(1)(A). Similarly, an individual may file a civil action to compel compliance with the access provision of 5 U.S.C. § 522(d)(1); however, actual damages may not be recovered in an "access" claim, the court may only order an agency to produce the records. *See Thurston v. United States*, 810 F.2d 438, 447 (4th Cir. 1987); *see also Rouse v. United States Dep't of State*, 548 F.3d 871, 876 (9th Cir.) *as amended by* 567 F.3d 408, n.1 (9th Cir. 2008) ("With respect to suits for access violations, the only remedy available is for the court to 'enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld

from him'" (quoting 5 U.S.C. § 552a(g)(3)(A))). Additionally, an individual may file a civil action under subsection (g)(1)(C) if the agency

> fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

5 U.S.C. § 552a)(g)(1)(C). In an action under this subsection, if "the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of (A) actual damages sustained by the individual as a result of the refusal or failure . . . but in no case shall a person receive . . . less than the sum of $1,000; and (B) the costs of the action with reasonable attorney fees . . . ." 5 U.S.C. § 552a(g)(4).

The Privacy Act provides the following statute of limitations:

> An action to enforce liability created under this subsection may be brought . . . within two years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to the establishment of the liability of the agency to the individual under this action, the action may be brought at any time within two years after the discovery by the individual of the misrepresentation.

5 U.S.C. § 552a(g)(5).

The SSA argues that Plaintiff's claims in the Second Amended Complaint are futile, because they are (1) barred by the statute of limitations; (2) did not result in damages to Plaintiff; (3) directed toward changing the substantive decisions of an agency; and (4) barred by *res judicata*.

### i. Statute of limitations

As the court has detailed, the Privacy Act provides that an action must be brought within two years from the date on which the action arose, 5 U.S.C. § 552a(g)(5). "In a normal Privacy

Act claim, the cause of action does not arise and the statute of limitation does not begin to run until the plaintiff knows or should have known of the alleged violation." *Majied v. United States*, 2007 WL 1170628, at *2 (W.D. Va. Apr. 18, 2007) (citing *Seldowitz v. Office of Inspector Gen. U.S. Dept. of State*, No. 00-1142, 2000 WL 1742098, at *3 (4th Cir. Nov. 13, 2000); *Doe v. Nat'l Sec. Agency*, NO. 97-2650, 1998 WL 743665 (4th Cir. Oct. 23, 1998)); *see also Tijerina v. Walters*, 821 F.2d 789, 798 (D.C. Cir. 1987) ("We therefore join other courts in holding that in a normal Privacy Act claim, the cause of action does not arise and the statute of limitation does not begin to run until the plaintiff knows or should know of the alleged violation.").

Some of Plaintiff's Privacy Act claims are premised upon allegedly false statements in the April 2006 evaluation. Taking the allegations in the Proposed Second Amended Complaint as true, which this court must do, Plaintiff alleges that she first received a written copy of the VA's 2010 denial of her claim for benefits, which in turn relied on and detailed Dr. Meymandi's April 2006 evaluation, on March 6, 2012. Prop. Sec. Am. Compl. [DE-109] ¶¶ 243-44. She contends she was not aware of the various false statements in Dr. Meymandi's 2006 evaluation, however, until she received a copy of it on March 21, 2012. *Id.* ¶¶ 255, 266. Accordingly, it appears at this juncture that for some of Plaintiff's Privacy Act claims, the statute of limitations did not begin to run until March 21, 2012, when she received a copy of the April 2006 evaluation. Plaintiff filed the original complaint in this action on March 14, 2012 which was within the two-year statute of limitations. The claims against the SSA in the Proposed Second Amended Complaint appear to relate back to the claims asserted in the original complaint. Consequently, the court finds that Plaintiff's Privacy Act claims asserted in her First and Second Claims for Relief are timely.

Additionally, Plaintiff's claims in her Fifth and Seventh Claims for relief, alleging that the SSA violated the Privacy Act by maintaining copies of two authorizations with a false date-stamp in her record and failing to maintain her appeal letter dated September 29, 2010 in her record appear to be timely. Again, taking Plaintiff's allegations as true, it does not appear that she became aware of the facts underlying these claims until she received materials from the SSA on March 21, 2012. Nevertheless, some of Plaintiff's Privacy Act claims are barred by the statute of limitations.

For example, Plaintiff alleges in her third claim for relief that the SSA violated the access provisions of the Privacy Act by failing to produce the April 2006 evaluation in response to the written requests for medical records that she made from July 17, 2006 through July 2009. Prop. Sec. Am. Compl. [DE-109] ¶¶ 550, 551, 561, 562. As Plaintiff herself states in the Proposed Second Amended Complaint, she was aware of the SSA's alleged failure to produce her requested medical records for quite some time, and indeed, filed a response on July 19, 2010, in the 2009 action stating the SSA had failed to provide her with medical records. Prop. Sec. Am. Compl. [DE-109-1] ¶¶ 179-80. The statute of limitations as to this claim, alleging that the SSA violated her right of access as to the April 2006 evaluation, accordingly, began to run at the latest on July 19, 2010. The two-year statute of limitations expired, consequently, well before Plaintiff initiated the instant action, and her third claim for relief is therefore barred under the Privacy Act. Accordingly, to the extent Plaintiff's Third Claim for Relief is based upon the SSA's failure to provide her with a copy of the April 2006 evaluation, and thereby deprive of her access to it, it is futile.

Similarly, Plaintiff's Fourth, Sixth and Eighth Claims for Relief must be dismissed as untimely. Those claims are based on the SSA's alleged failure to maintain (1) Plaintiff's written

requests for medical records and the SSA's responses thereto; (2) medical records from 1995 through 2006; (3) original hearing tapes of November 14, 1996, February 2, 1998, and May 28, 1998; and (4) an August 1, 2000 determination of benefits and the 1998 ALJ decision. The allegations in the Proposed Second Amended Complaint, however, are that since July 2010— when she alleges the SSA produced some, but not allegedly all of her requested records— Plaintiff was aware that the SSA allegedly failed to maintain (1) her written requests for medical records and information regarding its refusal to provide her with those records; (2) the original hearing tapes of November 14, 1996, February 2, 1998 and May 28, 1998; and (3) the August 1, 2010 determination of her benefits, the 1998 ALJ decision, the medical records of 1994 through 1996, and the hearing tapes of 1996 and 1998. *See* Prop. Sec. Am. Compl. [DE-109-1] ¶ 173 ("On June 5, 2010, Plaintiff received in the mail documents from SSA that SSA alleged was the record. However, she did not receive all the documents in the record including, but not limited to, SSA's administrative documents, SSA's adverse decisions, her numerous written appeals, the hearing tapes and the medical records of the 1994 and 2006 applications . . . ."). As to these materials, the two-year statute of limitations began to run, at the latest, in July 2010, and therefore Plaintiff's March 2014 initiation of this action was untimely. Accordingly, to the extent Plaintiff's Fourth, Sixth, and Eighth Claims for Relief allege Privacy Act claims, they are futile.

ii.   Failure to state a claim

The court agrees with the SSA that Plaintiff's timely Privacy Act claims are futile because Plaintiff fails to state a claim. In order to maintain a cause of action for violation of the maintenance provision of the Privacy Act, a plaintiff must allege sufficient facts to show (1) the agency's failure to maintain accurate records; (2) an adverse agency determination resulting from

23

the inaccurate records; and (3) the willful or intentional quality of the agency's action. *See White v. Office of Pers. Mgmt.*, 840 F.2d 85, 87 (D.C. Cir. 1988). SSA contends that to the extent any of Plaintiff's Privacy Act claims are not barred by the statute of limitations, they must be dismissed for failure to state a claim because she has failed to allege sufficient facts to give rise to an inference of intentional or willful conduct, or harm.

With regard to Plaintiff's first and second claims for relief, the court agrees with the SSA that she has failed to state a claim. Assuming that Meymandi's April 2006 written evaluation contains inaccurate statements of fact, the court nevertheless finds that Plaintiff has failed to allege sufficient facts to show that the SSA engaged in willful or intentional conduct by maintaining the 2006 written evaluation. Plaintiff alleges that other records maintained by the SSA demonstrate that Meymandi's statements in the 2006 evaluation regarding her personal, professional, and medical history are false, and therefore the SSA knew or should have known of the falsity of those statements. Prop. Sec. Am. Compl. [DE-109-1] ¶¶ 390-97, 516-519. The "standard for intentional or willful behavior under the Privacy Act has been articulated as an act committed without grounds for believing it to be unlawful, or by flagrantly disregarding others' rights under the Act." *Scrimgeour v. Internal Revenue*, 149 F.3d 318, 326 (4th Cir. 1998) (internal quotation omitted). In other words, the agency must engage in behavior that is something more than gross negligence. *Reinbold v. Evers*, 187 F.3d 348, 361 n.14 (4th Cir. 1999) ("This court has recognized that the evidentiary standard for showing 'willful or intentional' conduct is great—more than gross negligence."). Here, the court cannot discern how maintaining a record that contains a physician's notes of his patient's history—even if the facts in those notes conflict with other medical records—can constitute negligence, let alone

something more than gross negligence. Accordingly, Plaintiff's First and Second claims for relief under the Privacy Act must be dismissed.

The court also finds that Plaintiff's Fifth Claim for Relief fails to state a claim under the Privacy Act. In that claim, Plaintiff contends the SSA violated the Privacy Act by maintaining copies of two authorizations to release copies of consultative examinations signed and dated by Plaintiff on April 11, 2006, with a "false date stamp" of April 17, 2008. As stated above, one of the elements of a claim for failure to maintain accurate records under § 552a(g)(1)(C) is an adverse agency determination as a result of the inaccurate records. Here, Plaintiff alleges that the SSA "adversely determined to disclosed [sic] to the [the] VA Dr. Meymandi's written evaluation" based on the inaccurate date stamp on the authorization. Prop. Sec. Am. Compl. [DE-109-1] ¶¶ 581-82, 585.[2] As the SSA notes, however, Plaintiff's contention that the SSA violated the Privacy Act by disclosing Dr. Meymandi's report to the VA is contrary to law.

The Privacy Act prohibits the nonconsensual disclosure of personal information but permits disclosure for a "routine use," which is defined as a disclosure or use of a protected "record for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C. § 552a(e)(7). The Act also requires that the agency publish in the Federal Register "each routine use of the records contained in the system, including the categories of users and the purpose of such use." *Id.* § 552a(e)(4)(D). Accordingly, for a disclosure to qualify as a "routine use", the disclosure (1) must be compatible with the agency's purpose in collecting the record, and (2) must be in accordance with the "routine uses" the agency has published in the Federal Register.

---

[2] It appears to the court that rather than a "maintenance" claim, Plaintiff is attempting to assert a wrongful disclosure claim. Given Plaintiff's apparent disagreement with any attempt to broadly construe her pleadings, the court will nevertheless analyze this claim as one for damages pursuant to § 552a(g)(1)(C) for an adverse determination made on inaccurate records.

*Fattahi v. Bureau of Alcohol, Tobacco & Firearms*, 186 F. Supp. 2d 656, 660 (E.D. Va. 2002), *aff'd,* 328 F.3d 176 (4th Cir. 2003).

As to the first requirement, compatibility, a court must a make a "dual inquiry into the purpose for the collection of the record in the specific case and the purpose of the disclosure." *Id.* at 660 (quoting *Britt v. Naval Investigative Serv.*, 886 F. 2d 544, 548-49 (3d Cir. 1989)). "For the two purposes to be compatible, there must a 'concrete relationship or similarity . . . between the disclosing agency's purpose in gathering the information and in its disclosure." *Id.* (quoting *Britt*, 886 F.2d at 549-50). Here, it cannot be seriously disputed that there is compatibility between the SSA's procurement of a consultative examination to assess Plaintiff's claim for disability benefits on the basis of, *inter alia*, "service-connected Post Traumatic Stress Disorder (PTSD)," *see* Prop. Sec. Am. Compl. [DE-109-1] ¶ 75, and its disclosure to the VA for the purposes of determining Plaintiff's entitlement to a service-connected claim for PTSD. *Id.* at ¶ 77. This is especially so considering that the SSA is obligated, by law, to provide information to the Veterans Administration upon request. *See* 38 U.S.C. § 5106 ("The head of any Federal department or agency shall provide such information to the Secretary as the Secretary may request for purposes of determining eligibility for or amount of benefits, or verifying other information with respect thereto."); *see also Murincsak v. Derwinski*, 2 Vet. App. 363, 370-72 (1992) (explaining that the VA has the statutory duty to assist a veteran claimant to develop facts necessary to a claim, which includes requesting information from other federal departments or agencies, and that includes SSA decisions and supporting medical records).

The second criterion for "routine use" disclosure is also met here: the SSA published in the Federal Register that it discloses, as a routine use, "information to the Department of Veterans Affairs for its benefit programs . . . ." 20 C.F.R. § 401.150; *see also* 20 C.F.R. §

26

401.120 ("We disclose information when a law specifically requires it. . . . [T]here are . . . laws which require that we furnish other agencies information which they need for their programs. These agencies include the Department of Veterans Affairs for its benefit programs. . . ."). Again, it cannot seriously be disputed that the SSA's disclosure of Dr. Meymandi's 2006 written evaluation falls within this published "routine use."

Thus, regardless of whether Plaintiff consented to the disclosure of records, the SSA was obligated under law to provide the 2006 written evaluation to the VA. She cannot show, accordingly, that the SSA's disclosure to the VA was an "adverse determination" based on an inaccurate record, and her Fifth Claim for Relief therefore is futile.

Finally, Plaintiff's Seventh Claim for Relief fails to state a claim. In that claim, Plaintiff alleges that the SSA willfully and intentionally failed to maintain her September 29, 2010 appeal letter in the record, and thereafter adversely determined to "deprive her of a property interest" because she was receiving reduced monthly benefits; deprive her of the right of access to the administrative appeal process; and deny her the right of access to the court for review. This claim, asserted under 5 U.S.C. § 552a(g)(1)(C), must be dismissed for lack of causation. Here, there is no adverse agency determination resulting from the SSA's alleged failure to maintain the September 29, 2010, appeal letter. Indeed, it appears no further decision was made by the SSA with regard to Plaintiff's benefits. *See Chambers v. United States Dep't of Interior*, 568 U.S. 998, 1007 n.7 (D.C. Cir. 2009) (explaining that plaintiff could not state a claim under § 552a(g)(1)(C) which requires a specific "adverse determination" by the agency resulting from its failure to maintain accurate records, and explaining that a plaintiff cannot pursue a claim under § 552a(g)(1)(D) for "adverse effects").

Accordingly, the motions to amend must be denied as futile to the extent Plaintiff asserts Privacy Act claims in the Proposed Second Amended Complaint. All of the proposed Privacy Act claims are either untimely or fail to state a claim.

### c.    Constitutional Claims

Throughout the Proposed Second Amended Complaint, Plaintiff invokes the Constitution, and alleges the SSA violated the First and Firth Amendments to the Constitution by denying access to the courts, the Fifth Amendment by denying equal protection of the laws and depriving her of a property interest without due process of law. The court is cognizant that Plaintiff has expressed displeasure in the past where she feels the court has incorrectly construed her pleadings to state a constitutional or *Bivens* claim. The court will take her at her word that she is attempting to only assert claims under the Privacy Act.[3]

### 2.    Claims against Defendant Meymandi

In the proposed Second Amended Complaint, Plaintiff asserts four causes of action against Defendant Meymandi: (1) a cause of action for violation of 42 U.S.C. § 1983 by depriving Plaintiff of a protected property interest without due process of law in violation of the Fourteenth Amendment; (2) a cause of action for violation of 42 U.S.C. § 1983 for depriving Plaintiff of her rights to access to the courts in violation of the First, Fifth, and Fourteenth Amendments; (3) a cause of action of 42 U.S.C. § 1981 for discriminating against Plaintiff on the basis of her race by writing false and malicious statements in the evaluation; and (4) a cause of action for violation of 42 U.S.C. § 1985(2) by conspiring against Plaintiff, on the basis of race, to create false documents in Plaintiff's record.

---

[3]    Any attempt to assert a constitutional claim against the SSA would be futile. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) (declining to imply a cause of action for damages against federal agencies for violations of the Constitution).

Defendant Meymandi argues that is futile for Plaintiff to assert any of these claims, because (1) the claims are barred by the statute of limitations; (2) the claims are barred by judicial estoppel; and (3) Plaintiffs fails to adequately state any of the claims. Because the court agrees with the last argument, the court does not reach Meymandi's first two arguments.

### a.   § 1983 Claim for Deprivation of Due Process

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *see Filarsky v. Delia,* —— U.S. ——, 132 S.Ct. 1657, 1661-62 (2012); *Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009). Here, Plaintiff alleges that Meymandi, as an independent contractor for North Carolina's Disability Determination Service, acted under color of state law to deprive her of an accurate written psychiatric evaluation, which she contends is a protected property interest, in violation of the Due Process Clause of the Fourteenth Amendment.

The Fourteenth Amendment prohibits the States from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. Due process under the Fourteenth Amendment contains both substantive and procedural components. To establish a procedural due process claim, a plaintiff must plausibly allege that she (1) had a constitutionally cognizable life, liberty, or property interest; (2) she was deprived of that interest by some form of state action; and (3) without due process of law. *See Sansotta v. Town of Nags Head,* 724 F.3d 533, 540 (4th Cir. 2013). Here, Plaintiff cannot state a plausible procedural due process claim because even if this court assumes that she has a constitutionally cognizable property interest in an "accurate written psychiatric evaluation," her allegations do not show that she has been deprived of such without due process of law. Rather, her allegations show that she has adequate

post-deprivation review—via administrative and subsequent judicial review of disability benefits determinations or via Privacy Act claims—to satisfy due process requirements. *See Matthews v. Eldridge*, 424 U.S. 319, 349 (1976) (noting availability of postdeprivation review in upholding sufficiency of process provided to recipients of Social Security disability payments prior to termination).

As to the substantive component, "[t]he touchstone of due process is protection of the individual against arbitrary action of the government." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). Depending upon whether the claimed [due process] violation is by executive act or legislative enactment, different methods of judicial analysis are appropriate. . . . because there are different 'criteria' for determining whether executive acts and legislate acts are 'fatally arbitrary,' an essential element of any substantive due process claim." *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999) (en banc) (citing *Lewis*, 523 U.S. at 846).

If the claimed violation arises from legislative enactment, judicial review entails a two-step process. The first step requires a determination of whether a plaintiff asserts the violation of a fundamental right or liberty interest which is "objectively, deeply rooted in this Nation's history and tradition." *Id.* at 739 (quotation omitted). This requires "a 'careful description' of the asserted liberty right or interest that avoids overgeneralization in the historical inquiry." *Id.* at 747 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 722-23 (1997). If the plaintiff does assert the violation of a fundamental right, then the court subjects the challenged legislative action to strict scrutiny review; i.e., the legislation must be narrowly tailored to serve a compelling state interest. *Id.* at 739. (citations omitted). If plaintiff does not assert the violation of a fundamental right, however, then the court reviews the legislative action under the rational basis standard. *Id.*

Under that standard of review, legislative action survives review so long as it is reasonably related to a government interest. *Id.*

If the claimed violation arises from an executive act, then the issue of "fatal arbitrariness" must be addressed as a threshold question. *Id.* at 738. The court considers whether the challenged conduct "shocks the conscience;" that is, "whether the challenged conduct was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscious.'" *Id.* quoting (*Lewis*, 523 U.S. at 847 n.8). If the challenged conduct does not meet the "shock the conscience" test, a substantive due process claim fails. *Id.* If, however, the challenged conduct does "shock the conscience," the court proceeds to determine "the nature of the asserted interest to determine the appropriate level of protection." *Id.*

Here, Plaintiff can only be said to be challenging "executive" action. Upon review of the facts alleged in the Second Amended Complaint, the court cannot say that she has alleged facts that show conduct that "shocks the conscience." Accordingly, she fails to state a claim for violation of substantive due process.

### b.    § 1983 claim for deprivation of right of access to court

In Plaintiff's second § 1983 claim, she alleges that under color of state law, Meymandi deprived her of her right of access to the court as secured by the First, Fifth, and Fourteenth Amendments to the United States Constitution. Although Plaintiff's proposed Second Amended Complaint is 153 pages long and spans 709 paragraphs, it is devoid of any factual allegations as to how Meymandi precluded her access to the courts. Her allegations as to this claim "are nothing more than the sort of unadorned allegation of wrongdoing" that fail to state a plausible claim. *See Francis v. Giacomelli*, 588 F.3d 186, 295-96 (4th Cir. 2009). Accordingly, her § 1983 claim for deprivation of the right of access to court fails to state a claim.

### c.    § 1981 discrimination

Plaintiff also contends that Meymandi discriminated against her on the basis of her race,
in violation of 42 U.S.C. § 1981. That statute protects the rights of all persons to "make and
enforce contracts" without respect to race. 42 U.S.C. § 1981(a). For purposes of § 1981, "the
term 'make and enforce contracts' includes . . . the enjoyment of all benefits, privileges, terms,
and conditions of the contractual relationship." *Id.* § 1981(b). To state a claim under § 1981, a
plaintiff must allege sufficient facts showing that she is a member of a racial minority, that the
defendant intended to discriminate against her on the basis of race, and that the discrimination
concerned her right to enforce or make contracts. *See Spriggs v. Diamond Auto Glass*, 165 F.3d
1015, 1018 (4th Cir. 1999).

Here, Plaintiff appears to allege both that she had a contract with Meymandi and that she
was an intended third-party beneficiary of a contract between Meymandi and SSA. Even if this
court assumes that Plaintiff has adequately pleaded the existence of a contract between her and
Meymandi, or that she is an third-party beneficiary with sufficient rights to assert a § 1981 claim,
Plaintiff's allegations are still insufficient to state a plausible claim. Plaintiff bases her § 1981
claim on the unremarkable fact that Meymandi recorded her race in the written report of her
evaluation, and her conclusory allegation that Meymandi "does not write false statements and
false rationales for the bases of his diagnoses in the written evaluations of other similarly situated
individuals who are white." Prop. Sec. Am. Compl. [DE-109-1] ¶ 695. No factual allegations
support Plaintiff's conclusory assertion. The Fourth Circuit has emphatically rejected similar
allegations as being insufficient to state a § 1981 claim. *See Francis*, 588 F.3d at 195-96 (finding
allegations that plaintiffs were African American males, that defendants were all white males,
and that defendants had never undertaken the actions of terminating the employment of white

males to be "conclusory and insufficient to state a § 1981 claim" because they were "nothing more than the sort of unadorned allegation of wrongdoing" that fail to state a claim). The same result is mandated here.

### d.   § 1985 conspiracy claim

Plaintiff's final claim against Meymandi in the proposed Second Amended Complaint asserts that he is liable for violating 42 U.S.C. § 1985(2) by conspiring with a psychologist, Eleanor Cruise, to use Meymandi's allegedly false statements to create and fabricate diagnoses, which were then relied on in subsequent benefit determinations.    In the first Amended Complaint, Plaintiff alleged these same actions constituted a violation of § 1985(3). Out of an abundance of caution, the court will proceed to analyze whether Plaintiff has stated a claim under either subsection.

Section 1985(2) "proscribes intimidation of witnesses in federal courts." *Kush v. Rutledge*, 460 U.S. 719, 722 (1983); 42 U.S.C. § 1985(2) (prohibiting "two or more persons" from conspiring "to deter, by force, intimidation, or threat, any party, or witness in any court of the United States from attending such court or from testifying to any matter pending therein . . . or to injure such party or witness in his person or property on account of his having so attended or testified"). Section 1985(3), in turn, prohibits conspiracies to deny civil rights. To state a claim under § 1985(3), a plaintiff must allege "1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995) (citations omitted).

33

With regard to the second element of a § 1985(3) claim, a plaintiff cannot simply identify himself or herself as an African American and describe a defendant's conduct as "race hate abuse" to state a claim under § 1985(3). *Green v. Maroules*, 211 F. App'x 159, 162 n.\* (4th Cir. 2006). Furthermore, a plaintiff alleging unlawful intent in a conspiracy claim under § 1985(3) must "plead specific facts in a nonconclusory fashion to survive a motion to dismiss." *Gooden v. Howard County*, 954 F.2d 960, 970 (4th Cir. 1992).

Additionally, to prove a § 1985 conspiracy, "a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Simmons*, 47 F.3d at 1377 (citations omitted). "[A]n express agreement is not necessary," although it "must be shown that there was a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences." *Id.* at 1378 (quotation omitted). This is a "relatively stringent standard" that requires sufficient evidence that the alleged conspirators participated in a joint plan. *Id.* at 1377.

Here, Plaintiff's allegations fail to state either a plausible § 1985(2) or (3) claim. First, with regard to both claims, she has failed to plead any facts in a nonclusory fashion such that her pleadings may survive a motion to dismiss. *See Gooden*, 954 F.2d at 970. She alleges that Cruise, who performed a review of Plaintiff's records—including Meymandi's 2006 evaluation—"came to a meeting of the mind for Defendant Cruise to support Defendant Meymandi's diagnoses and history." Sec. Prop. Am. Compl. [DE-109-1] ¶ 384. She suggests this conspiracy can be inferred because Cruise did not mention or document various alleged inaccuracies in Meymandi's evaluation. *Id.*¶¶ 382-83. She also summarily alleges that "Dr. Meymandi and Dr. Cruise conspired and entered into an express and/or implied agreement . . . . to deprive Plaintiffs [sic] . . . [of] equal protection of the laws." *Id.* ¶ 701. She contends Dr.

Meymandi and Dr. Cruise acted in furtherance of this conspiracy by Dr. Meymandi making false statements in the 2006 written evaluation, and Dr. Cruise "using those false statements to create and to fabricate diagnoses . . . ." *Id.* ¶ 702.

As Defendant Meymandi argues, these allegations do not include any facts that would support the idea that Defendants Meymandi and Cruise had a meeting of the minds. There are no facts showing that Meymandi ever had any communication with, or was ever contacted by Cruise. Moreover, the fact that Cruise allegedly reviewed or "used" Meymandi's evaluation in her own review is entirely unremarkable, and is not suggestive of a conspiracy. A conspiracy is an essential element a claim under either § 1985(2) or (3), and accordingly, Plaintiff's claim(s) under either of those subsections must be dismissed.

Additionally, she has failed to allege facts showing either Meymandi or Cruise were conspiring to deter her from attending or testifying in federal court, which is a necessary element of § 1985(2). Moreover, as to the § 1985(3) claim, she has failed to allege sufficient facts to plausibly show that Meymandi and Cruise were motivated by racial or class based discriminatory animus. Plaintiff, accordingly, has failed to state a claim under § 1985.

As the foregoing demonstrates, Plaintiff has failed to adequately state any timely claims in the Proposed Second Amended Complaint. Her motions to amend are consequently DENIED.

### 3. Motions to Dismiss Claims Asserted in the Amended Complaint

Having determined that Plaintiff's motions to amend must be denied, the court turns to the motions to dismiss Plaintiff's claims in the Amended Complaint. The claims in the Amended Complaint [DE-30] largely mimic the claims asserted in the Second Amended Complaint.

For the same reasons stated above, the court finds that Plaintiff's Second and Fourth Causes of Action against the SSA in the Amended Complaint are barred by the statute of

limitations, and that Plaintiff's First, Third, and Fifth Causes of Action against the SSA and Sixth and Seventh Causes of Action against Meymandi fail to state a claim. Accordingly, the motions to dismiss are ALLOWED.

**4.      Claims against Defendant Cruise**

In both the Proposed Second Amended Complaint and the original Amended Complaint, Plaintiff asserts a §1985 claim against Defendant Eleanor Cruise. Plaintiff has previously moved to re-issue summons as to Defendant Cruise, which this court allowed in an order filed on April 8, 2015 [DE-83]. It does not appear, however, that those summons were ever issued. Regardless, the court finds the issuance of the summons now to be futile, because as the court has detailed in this order, Plaintiff fails to adequately allege any conspiracy between Cruise and Meymandi. There is no need, accordingly, to serve Cruise with the Amended Complaint.

## V. CONCLUSION

For the foregoing reasons, the Motions to Dismiss [DE-51; DE-74] filed by the Defendants are ALLOWED, and the Plaintiff's Motions for Leave to File [DE-108; DE-109] are DENIED. With the dismissal of all Plaintiff's claims, all other remaining motions [DE-88; DE-101; DE-103, DE-110; DE-120; DE-127] are DENIED as moot, with the exception of Plaintiff's Motion to Seal [DE-114], which is ALLOWED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED. This the 27 day of August, 2015.

James C. Fox

James C. Fox
Senior United States District Judge
